Zimmerman, J.
This court has heretofore upheld the validity of the Ohio Turnpike Act with its establishment of the Turnpike Commission. See State, ex rel. Allen, v. Ferguson, Aud., 155 Ohio St., 26, 97 N. E. (2d), 660, and State, ex rel. Ohio Turnpike Commission, v. Allen, Secy.-Treas., 158 Ohio St., 168, 107 N. E. (2d), 345, certiorari denied, 344 U. S., 865, 97 L. Ed., 671, 73 S. Ct., 107.
Both Ellis and Solether contend that their petitions are good and that the Turnpike Commission is attempting to exercise authority in violation of constitutional provisions and beyond the rights of appropriation conferred by statute. In making such contentions several propositions are advanced, among them being:
1. The provisions of the Ohio Constitution relating to the appropriation of property for public use are not a grant of power but a limitation thereon, and the taking of property must not only be for a public use, but for a necessary public use.
2. The tailing of private property for what is essentially a private use by a public or quasi-public agency, such as the Turnpike Commission, is an unconstitutional exercise of power.
3. The Ohio Turnpike Act itself limits the power of the Turnpike Commission to appropriate lands for any purpose other than the construction and reasonable operation of a turnpike.
It must at once be recognized that the Turnpike Commission is a creature of statute and possesses only such authority and powers as may be conferred on it by enactments of the General Assembly.
*90 Section 5537.03, Revised Code, relating generally to turnpike projects, reads:
“In order to remove the present handicaps and hazards on the congested highways in this state, to facilitate vehicular traffic throughout the state, to promote the agricultural and industrial development of the state, and to provide for the general welfare by the construction of modern express highways embodying safety devices including center divisions, ample shoulder widths, longsight distances, multiple lanes in each direction, and grade separations at intersections with other highways and railroads, the commission is hereby authorized and empowered to construct, maintain, repair, and operate turnpike projects at such locations as are approved by the Governor, and in accordance with such alignment and design standards as are approved by the director of highways, and issue turnpike revenue bonds of this state, payable solely from revenues, to pay the cost of such projects.”
Section 5537.04, Revised Code, contains a detailed description of the authority and powers of the Turnpike Commission and provides, inter alia:
“The commission is hereby authorized and empowered to:
i t * * #
“(E) Construct, maintain, repair, police, and operate turnpike projects, and establish rules and regulations for the use of any such turnpike project;
{ t * * *
“ (I) Acquire, in the name of the state, by purchase or otherwise, on such terms and in such manner as it deems proper, or by the exercise of the right of condemnation in the manner provided by Section 5537.06 of the Revised Code, such public or private lands, including public parks, playgrounds, or reservations, or parts thereof or rights therein, rights of way, property, rights, easements, and interests as it deems *91 necessary for carrying ont Sections 5537.01 to 5537.23, inclusive, of the Revised Code, and full compensation shall be paid for public lands, playgrounds, parks, parkways, or reservations so taken;
“(J) Designate the locations, and establish, limit and control such points of ingress to and egress from each turnpike project as are necessary or desirable in the judgment of the commission and of the director of highways to insure the proper operation and maintenance of such projects, and prohibit entrance to such project from any point not so designated, and, at its cost, at all points of ingress and egress, cause to be erected large and suitable signs, facing traffic from each direction on the toll road, which shall designate the number and other designations of all United States or state highways of ingress or egress, the names of all Ohio municipal corporations with a population of five thousand or more within a distance of seventy-five miles on such roads of ingress or egress, and the distance in miles to such designated municipal corporations ;
( ( * # #
“(0) Do all acts necessary or proper to carry out the powers expressly granted in Sections 5537.01 to 5537.23, inclusive, of the Revised Code.”
Section 5537.01, Revised Code, is devoted to definitions, and 'subdivision B thereof recites:
“ ‘Project’ or ‘turnpike project’ means any express highway, super highway or motor way constructed under Sections 5537.01 to 5537.23, inclusive, of the Revised Code, at such location as is approved by the Governor, including all bridges, tunnels, overpasses, underpasses, interchanges, entrance plazas, approaches, toll-houses, service stations, and administration, storage, and other buildings and facilities which the commission deems necessary for the operation of the project, together with all property, rights, easements, and in *92 terests which may be acquired by the commission for the construction or the operation of the project. Each project or turnpike project shall be separately designated, by name or number, and may be constructed or extended in such sections as the commission may from time to time determine. ’ ’
Acting under the authority it no doubt deemed had been conferred on it by statute, the Turnpike Commission in its resolutions appropriating the lands in issue stated that among the rights and restrictions appropriated were:
“Second, all rights to erect on any of the aforesaid remaining lands any billboard, sign, notice, poster, or other advertising device which would be visible from the travelway of Ohio Turnpike Project No. 1, and which is not now upon said lands.” (Emphasis supplied. )
Upon a reading of the above-quoted statutory provisions, the query immediately arising is whether the authority granted the Turnpike Commission is sufficiently broad to support the resolutions as they pertain to the erection and maintenance of billboards, signs, etc.
In the first paragraph of the syllabus in the case of Pontiac Improvement Co. v. Board of Commissioners, 104 Ohio St., 447, 135 N. E., 635, 23 A. L. R., 866, which paragraph was not disturbed or challenged in the later case of State, ex rel. Bruestle, City Solicitor, v. Rich, Mayor, 159 Ohio St., 13, 110 N. E. (2d), 778, this court held:
“The right of eminent domain belongs to the sovereign power, and statutes delegating authority to exercise it must be strictly construed. When it is sought to take the property of an individual under statutes granting such authority to corporations, subject to conditions specifically set forth, the protection of the constitutional guaranty of the right of private prop *93 erty requires that the powers granted by the Legislature be strictly pursued, and where the authority granted is to acquire a fee or lesser interest the term ‘lesser interest’ cannot be construed to mean authority to prescribe regulations from time to time as to the manner in which the property may be used or improved by the owner while he is in possession.”
An examination of the statutes pertaining to the powers and functions of the Turnpike Commission, in conjunction with what is said in the first paragraph of the syllabus in the Pontiac case, convinces this court that no express authority was given the commission which enables it by appropriation proceedings to deny the owner of lands taken for the construction of a turnpike the right to use his remaining lands for the erection and maintenance of billboards, signs, notices, posters or other advertising devices.
Conceding, however, for the purposes of discussion, that existing statutory authority is sufficiently comprehensive to permit the Turnpike Commission to adopt and execute a resolution or resolutions which will result in the elimination of billboards, signs, etc., on lands not appropriated for actual turnpike construction, we are of the opinion that the adopted resolution quoted above is too indefinite and uncertain to be valid and enforceable. The word, “visible,” standing alone is vague and ambiguous. What might be visible to one person might not be visible to another. No standard is set up whereby the word may be accorded practical meaning and effect. What approximate distance in feet or yards is involved?
True, Section 5537.23, Revised Code, states that the Turnpike Act, being necessary for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes thereof, but to what does such liberal construction extend? Undoubtedly, such liberal construction pertains to the establishment of turnpikes and their facilities, bqt we do not believe it can *94 reasonably be said to comprehend the appropriation of lands and the uses thereof such as are here involved which are not necessary in the construction and operation of a turnpike proper.
In the interests of safety and to insure an uncluttered view of the landscape, the elimination of billboards and signs in proximity to a turnpike might be desirable, but existing legislative authority to permit such elimination is lacking. If specific authority should be forthcoming, we suppose further problems and further litigation might occur, but they are merely anticipatory and of no present concern.
The petition filed in the Ellis case raises other questions which should probably be noticed. Such petition alleges, one, a fatal defect in the appropriation resolution by its omission to set forth the necessity for appropriating Ellis’ land, two, inability of the Turnpike Commission to proceed with the appropriation because it did not first submit to Ellis its plans for the construction of the turnpike through his property to enable him to calculate the damages he would sustain thereby, and, three, failure of the Turnpike Commission to negotiate with Ellis for a sufficient length of time as to the price to be paid him for his land before appropriation proceedings were begun.
As to the first proposition, the very adoption of the appropriation resolution indicates the necessity for the appropriation in the minds of the members of the Turnpike Commission, and the resolution is not fatally defective by omitting to state in terms that the appropriation is necessary. As to the remaining propositions, it is essentially within the discretion of the Turnpike Commission to determine whether sufficient preliminary negotiations have been had before appropriation proceedings are commenced, and certainly upon the trial of the appropriation case the landowner whose property is desired would be given ample *95 opportunity to produce evidence as to the damages he will suffer by reason of the taking of his land and the manner of constructing the turnpike through it.
Because of the conclusion we have reached on the principal question presented in both the Ellis and Solether cases, the judgment of the Court of Appeals in the Ellis case is reversed and final judgment is rendered for Ellis to such an extent as will permit him to erect billboards, signs, etc., on his lands not taken for turnpike construction purposes, and in the Solether case the judgment of the Court of Appeals is affirmed, so far as it reverses the judgment of the trial court in sustaining the demurrer to the petition, but is reversed, so far as it remands the cause to the trial court for further proceedings, and the cause is remanded to the Court of Common Pleas, with instructions to enter judgment for Solether.

Judgments accordingly.

Middleton, Taft, Hart and Stewart, JJ., concur.